At the last March term in Suffolk, Sedgwick, Sewall, and Par ker, justices, delivered their opinions seriatim.
* Parker, J.
The questions arising upon these pleadings, voluminous as they are, may be reduced to three, and may be presented in the following shape:—
1. Whether the issue, joined upon the first plea of non devisavit, was the general issue, so that the judge was incorrect in directing that the mere production of the will, regularly executed and proved, was sufficient to maintain that issue, without requiring of the demandant proof of all the material facts alleged in his count. As this opinion of the judge was regularly excepted to, if it shall now be decided that non devisavit was the general issue, a new trial must be awarded, unless, upon other of the pleadings, where matter of law is regularly presented to the Court, an opinion of the Court shall be given in favor of the tenant, in which case a new trial need not be granted on this point, it being moved in favor of the tenant.
After all the researches I have been able to make upon this part of the subject, I have not been able to find any authority expressly deciding whether the issue non devisavit is special or general. Ne dona pas, or non dedit, is, however, in the old entries, considered a general issue in this form of action; and no instance having been discovered, where non devisavit has been so used, perhaps the inference is fair, that it is not the general issue. There is one instance in a modern authority, where non devisavit is pleaded, not as a general but special issue. Upon the whole, then, I am of opinion that the judge was correct in his decision as to the sufficiency of the evidence offered by the demandant to support that issue.
2. The next general question arises upon the demurrer, which terminates the proceedings on the second plea in bar made by the tenant. And this question is, whether the indenture executed by Thomas Dudley and Joseph Carnes, the recoverer in the common recovery, the part sealed by said Carnes being duly ac- [ * 449 ] knowledged and recorded * in the registry of deeds, and the part sealed by said Dudley not acknowledged by him nor recorded, is a sufficient declaration of the uses of said common recovery, so that the same passed an estate in fee simple to Joseph Dudley, who by his will created the estate tail, under which the present demandant claims.
This is the most material question in the cause, and has received all the attention which its importance and the learned arguments bestowed upon it by the counsel merited.
The objections to the validity of this indenture as a declaration of uses, are founded upon a statute of the government, in force when the common recovery was suffered, which provides “ that all deeds-or conveyances of any houses or lands within the province, *349 signed and sealed by the party or parties granting the same, having good right, &c., and acknowledged before a justice of the peace, and recorded at length in the registry of the county where such houses or lands do lie, shall be valid to pass the same, without any other act or ceremony in the law whatsoever; and providing “ that no bargain, sale, mortgage or other conveyance of houses or lands, made and executed within the province, shall be good and effectual in law to hold such houses or lands against any other person or persons, but the grantors and their heirs only; unless the deed or deeds thereof be acknowledged and recorded in manner as is before expressed.”
It is contended by the counsel for the tenant, that a common recovery suffered by a tenant in tail, with an intention, expressed in a covenant, to pass the estate in fee simple to another person, is a conveyance within the intent of this statute; and that, to make it effectual against any other person than the recoveree and his heirs, such covenant ought to be acknowledged and recorded; because it is said that notwithstanding the * formal ac- [ * 450 ] knowledgment of title in the recoverer by the proceedings in a common recovery, the effect of it is merely to enlarge the estate of the tenant in tail to a fee simple, unless there be a deed to lead or declare a use different from that which is implied by law ; and if there be such deed, as that is the operative part of the conveyance, unless it be acknowledged and recorded, it is of no effect, and leaves the common recovery to its legal operation, viz. a resulting use to the recoveree.
I am satisfied with the reasonings which have been used to show that a common recovery, with a deed to lead the uses to any person other than the recoveree or tenant in tail, is a conveyance within the intent of the provincial statute; and that the want of an acknowledgment and registry of such a deed will have the same legal effect on such a conveyance, as it would have on a deed of bargain and sale of the same premises. Now, it is clear from the whole purview of the statute, that a deed of bargain and sale, signed and sealed by the grantor, is not absolutely void. On the contrary, the expressions in the negative part of that statute are equivalent to a declaration that a deed so circumstanced is good against the grantor and his heirs; and it has been frequently determined, that such deeds have enabled the grantees to hold, even against other persons than the grantor and his heirs, when it appears that the grantee has taken and held possession under such deed, or when other circumstances appear, which show that a second purchaser had notice of the first grant; it being reasonably considered that, as the object of the statute was to give notoriety to conveyances, if that object was *350 completely attained without a registry, the purpose of the law was answered, although the terms of it were not complied with.
Two questions therefore arise here.
1. Whether the deed to lead the uses of the common recovery has been acknowledged and recorded, within the reasonable intent of the statute. [*451] *2. The second is, if it has not, whether there are any circumstances appearing in the pleadings, which in the present action render the deed valid, notwithstanding such defect.
As to the first, question, it is to be observed that here is an indenture interchangeably executed between Thomas Dudley, the tenant in tail, and Joseph Carnes, who was to be the recoverer in the process agreed to be brought. The intention of the tenant in tail is clearly manifested to convey an estate in fee simple to Joseph Dudley, his brother. Carnes was the person selected, probably as the fi'iend of the family, to prosecute the suit. Upon judgment and execution of it by writ of seisin, Carnes would have the legal title to the tenements. The use might or might not result to Dudley, according to circumstances. If Carnes could prove that he had paid a valuable consideration for the estate, the use, which the law raises, would be rebutted. The termination of the suit left upon the record of the Court the apparent title in Carnes, and showed that Dudley had been a mere disseisor.
Under these circumstances, I am not prepared to say that the acknowledgment and registry of the part of the indenture sealed by Carnes was not sufficient. Certainly, all the substantial purpose of registry was answered by it, as much as it would have been by the acknowledgment and registry of the other part.
As Dudley speaks first in the indenture, the objection, that purchasers going to the records would find nothing respecting his estate, does not apply; for they would there find an indenture between Thomas Dudley and Joseph Carnes; and if they came away ignorant of the contents of the indenture, it would be their own fault.
And yet I do not wish to give a decided opinion upon this point, because it is a subject of some intricacy, and because the opinion I have formed upon the other question renders it wholly unnecessary. * The other question is, whether the facts appearing [*452] in this set of pleadings do or do not show a good title in the demandant, whether the deed to lead the uses of the recovery was acknowledged and recorded, or not.
It is admitted by the pleadings, that an indenture between Thomas Dudley and Joseph Carnes was in fact executed, which deed con *351 tained covenants that a common recovery should be suffered to the only use of Joseph Dudley in fee simple; that the recovery was so suffered; that seisin was delivered to Carnes by the sheriff; that the tenant in possession attorned to him. It is alleged in the replication that, by virtue of these proceedings, and of the statute of transferring uses into possession, Joseph Dudley became seised in fee simple; that he made the devise set forth in the count; that Abigail his wife entered and became seised of the life estate created by the will; that she surrendered to William Dudley, to whom the remainder was given by the same will; that he entered, &c.
The answer to all these facts is, in the rejoinder, that the said indenture was never acknowledged by said Thomas Dudley, nor was either part thereof acknowledged by him or recorded.
Now, this answer does not deny any of the facts in the replication, which go to establish an estate in fee simple in Joseph Dudley. Between him and Thomas the conveyance is undoubtedly good, without acknowledging or recording. What, then, is to prevent the demandant from recovering ?
If it be said that, although as between Thomas and Joseph Dudley, an estate in fee simple passed, yet that the devisee of Joseph cannot avail himself of it against the tenant, on account of the want of acknowledgment of the deed to lead the uses, it may be asked, what there is in this record to show that the tenant has acquired any title which will permit her to question the validity of the transaction. It is true she has alleged * generally that she has the estate of the said Thomas Dudley; but [ * 453 ] in this manner of pleading she puts nothing in issue but the estate of Thomas Dudley. Whether she has his estate or not, is not traversable. How she has it, whether by purchase for valúa b.e consideration, by gift without any consideration, by devise, by act of law, or by disseisin, does not appear.
Now, it seems to me that, in order to establish a right to defeat a conveyance, which was good between the two Dudleys, she ought to have spread her title upon the plea, so that it might have been traversed by the demandant. The authorities for this opinion will be found referred to in Com. Dig. Title Pleader, 3 E. 4.
I consider the question submitted to the Court by this demurrer to be in substance, whether the recovery, and deed to lead the uses, and the subsequent proceedings show that the estate tail, which was in Thomas Dudley before the recovery, passed as a fee simple to Joseph Dudley; and I cannot hesitate to answer in the affirma five.
Had the tenant shown that she, for a valuable consideration, pur chased of Thomas Dudley, without notice of the estate created in *352 Joseph, the questions respecting the acknowledgment and registry of the deeds might be more material. But even in that case, considering the acts of notoriety which have taken place, the seisin of Joseph Dudley pursuant to the declared uses of the recovery, and the possession in conformity to his will, it is rendered very questionable whether the mere want of acknowledgment and recording would have defeated the estate.
The same question is presented in another shape on the third plea of the tenant, and the proceedings of the parties thereon, which ended in an issue tendered in the rejoinder by the tenant to the demandant’s replication. This issue is, that the recovery was suffered to the only use of Thomas Dudley and his heirs and as- [ * 454 ] signs forever. * Admitting this to be an issue of fact (it rather appearing to be an issue in law), then, according to the foregoing reasoning, the judge was incorrect in directing the jury that the indenture before mentioned was of no avail, and that the recovery enured to the use of Thomas Dudley for want of a sufficient deed to lead the uses.
The deeds were sufficient as against Thomas Dudley and his heirs; and it was the estate of the heirs, which was set up in this third plea.
The fourth plea denies that John Gray, and Abigail his wife, did bargain, sell and surrender all her right, title, &c., to said estate to William Dudley; and issue is taken upon this plea.
Upon this issue came in question the validity of the deed from John and Abigail Gray of her life estate. This deed was acknowledged by John Gray, but not by his wife ; and it was recorded (a).
I know of no necessity in this country of the wife’s acknowledging a deed, other than what results from the provision in the statute aforesaid. Here there is no private examination of the wife, as in England. But even there, the deed of a wife, who joined with her husband in the conveyance of her land, although generally a feme covert can convey only by fine, has been held to be good upon some slight acts of hers after the death of her husband, construed to amount to a confirmation (1). Now, here, Abigail Gray, with her husband, executes a deed of her land. This certainly is good against the husband, if he be living; if he be not, as to any stranger or person not showing title, it is good. At any rate, it shall avail to the grantee, until entry made by the wife, after the death of the husband. Had the husband alone conveyed, before the statute ot 32 Hen. 8. c. 28., it would have worked a discontinuance of her *353 estate, so that she would have been put to her action; and even since that statute, it is a discontinuance until * entry by the wife after the death of her husband; this issue, then, [ * 455 ] was properly found for the demandant.
I am therefore of opinion that the surrejoinder, which is demurred to in the second set of pleadings, is good; that upon the first and third issues to the country the direction of the judge was correct, and that it was otherwise upon the second issue, and that for the misdirection of the judge on this issue the demandant is entitled to a new trial.
Sewall, J.
[After reciting the pleadings.] These pleadings terminating in three issues of fact, and a demurrer iri law, the present state of the action is, two verdicts upon issues of fact, viz- that Joseph Dudley, deceased, made the devise, &c., and that his widow, afterwards Abigail Gray, surrendered her life estate, have been found for the demandant; and upon the other issue, a verdict that the common recovery was suffered to the use of Thomas Dudley has been found for the tenant. Each party has filed exceptions to the opinions and decisions of the Court at the trial of those issues; and these exceptions, with the demurrer arising upon the tenant’s second plea in bar, are now before us as matters of law.
The demurrer is upon the surrejoinder of the demandant, in which he avers that the indenture mentioned in his replication, is the deed of Joseph Carnes and Thomas Dudley, by them duly signed, sealed and delivered; one part whereof, executed by the said Joseph Carnes, was by him duly acknowledged and recorded.
The tenant therefore confesses the indenture in question to be the deed of Thomas Dudley; if, without his acknowledgment, or any registry of the part executed by him, and upon the acknowledgment by Carnes, and a registry of the part executed by him, the indenture may be adjudged to be the deed of Thomas Dudley. And the surrejoinder * is sufficient in law, if such a deed [ * 456 ] operated a conveyance according to the intention of the parties.
A question essentially the same arises upon the exceptions by the demandant to the decisions and directions which produced a verdict for the tenant, that the common recovery was to the use of Thomas Dudley in fee simple. The direction particularly excepted to, is to this effect; that the indenture in question, both parts of which had been admitted and read in the trial, was improperly admitted, and ought not to have any effect; because, as Thomas Dudley’s deed, it had not been acknowledged and recorded, and therefore the com mon recovery was to the use of Thomas Dudley and his heirs.
Respecting the second and third pleas in bar, it may be observed *354 that they do not answer the demandant’s count. The common recovery set forth in them was suffered by Thomas Dudley to bar the entail under which he held the demanded premises; and if suffered to his own use in fee simple, and he thereby became seised accordingly at the date of the recovery, yet it may very well be that Joseph Dudley, the testator, some years afterwards, at the date of his last will, was lawfully seised in fee simple of the same premises. It is not perceived that the titles or seisins of Thomas Dudley and Joseph Dudley, the one prior to the other, can be even argumentatively incompatible. The seisin of Joseph, the testator, is not traversed; and if confessed, the plea neither avoids that, nor the title of the demandant, derived from the gift and devise alleged. It will not be pretended that this is done in the color given to the demandant by a fiction immaterial and not traversable. The other averments, in one plea conveying the whole, and in the other two eighth parts of the freehold. to the tenant, technically called pleading in a que estate, are alike immaterial. This mode of pleading is [ * 457 ] sufficient only * when the title of the demandant is traversed, or answered by sufficient matter before alleged (2).
It may be considered, however, that the immateriality of the pleas m bar is cured or aided by the replications, in which the title and seisin of Joseph Dudley, the testator, is more specially alleged ; thus rendering the common recovery material to the title of the demandant. But the title and seisin derived therefrom to Joseph Dudley avoids the general averments deriving a freehold in the demanded premises to the tenant, and these are no further insisted on.
The rejoinder, enforcing the second plea in bar, avers the supposed defect in the indenture to lead the uses of the common recovery, and this by the surrejoinder and demurrer is brought to the single question, whether an indenture, liable to that objection, is in law his deed, and a sufficient conveyance of the demanded premises to Joseph Dudley, the testator.
The rejoinder, enforcing the third plea in bar, rests upon the averment that the common recovery was to the use of Thomas Dudley. And from the report of the judge, who sat in the trial of the issue to the country tendered in this rejoinder, it appears that the same question of law arose upon that trial, viz., whether the indenture given in evidence was, notwithstanding the supposed defect objected to it, the deed of Thomas Dudley, and a sufficient conveyance to Joseph Dudley, the testator.
By the provincial act of 9 W. 3. c. 8., entitled, “An act for regis *355 tering deeds and conveyances,” it is enacted and declared that, for the prevention of clandestine and uncertain sales of houses and lands, and that it may be better known what right, title or interest persons have, &c., all deeds or conveyances of any houses or lands, &c., signed and sealed by the party granting the same, having * good and lawful right or authority thereto, and [ * 458 ] acknowledged by such grantor before a justice of the peace, and recorded at length in the registry of the county, shall be valid to pass the same, without any other act or ceremony in the law whatsoever. And that no bargain, sale, mortgage, or other conveyance of houses or lands, made and executed within this province, shall be good and effectual in law to hold such houses or lands against any other person, or persons, but the grantor or grantors and their heirs only, unless the deed or deeds thereof be acknowledged and recorded in manner as is before expressed.
It is upon the latter provision of the statute, that the acknowl edgment by Thomas Dudley, and a distinct registry of the part executed by him of the indenture between him and Joseph Carnes, have been urged upon the attention of the Court, as essential requisites to the validity and operation of the deed to lead the uses of the common recovery suffered by Thomas Dudley, and to the purpose intended by the parties of transferring the demanded premises to Joseph Dudley, the testator in fee simple.
A deed to lead the uses, and a common recovery suffered pursuant thereto, are in the sense of law one conveyance, and when employed to transfer an estate in fee simple from the recoveree to a third person, for a good or valuable consideration, the deed expressing this intent is, I think, without any doubt, a conveyance within the purview, and the restraining or negative clause of the statute now cited. The construction of that clause is therefore to be care fully examined and determined, so far as the inquiry may be applicable in the case at bar.
The statute has not prescribed any time, within which the acknowledgment and registry of deeds shall be had, and has not declared any deed, where those requisites are wanting, to be utterly void or of no effect. On the contrary, a deed not acknowledged or recorded is declared * to be good and [ * 459 ] effectual against the grantor and his heirs.
Thus in the case of Flucker vs. Hall, mentioned by Judge Trow bridge (3), as decided by the superior Court of the late province, upon a construction of this statute, it was determined that the deed by a grantee in a deed not registered, of the premises conveyed to *356 him, operates and may be effectual to the second grantee. And it has never been questioned, that lands holden by an unregistered deed are the estate of the grantee, to be charged with his debts, to be liable to the dower of his widow, or to descend to his children or heirs at law. The premises conveyed are therefore understood to vest in the grantee, liable only to be divested by the positive provision of the statute, to protect the title of a second purchaser or creditor, claiming from the grantor bona fide, and without notice And where a visible and notorious seisin and possession has accompanied an unregistered deed, these circumstances have been adjudged sufficient notice, to prevent any subsequent deed or purchase.
This construction was given to this statute in the case of Richardson vs. Fowle & al. (4), decided also in the superior Court of the late province; and it fulfils, in this respect, the intention of the statute for the prevention of fraud, and injury by clandestine sales or uncertain titles in lands or tenements.
The restrictive or negative clause under consideration has never been applied to avoid a conveyance, and prevent the intentions of the parties in a lawful deed, but in the case provided for by the statute, when such deed operates to the injury of an innocent purchaser or creditor, otherwise lawfully entitled. In other eases, deeds are to have their legal operation, and when defective in any requisite of the statute, are to be construed, and have effect, according to the course of the common law.
j *460 ] *lt is never therefore a legal conclusion, respecting a deed defective in any requisite of the statute, but admitted to be otherwise, the lawful deed of the party, or proved to be in every other respect his deed, that it is not his deed, because of the supposed defect. The statute avoids a deed thus defective, so far as to prevent its operation against any other person or persons than the grantor and bis heirs, that is, to the injury of any innocent person. But against the grantor and his heirs, every lawful deed, however deficient in the peculiar requisites of the statute, is impliedly enforced by the statute itself.
It is in this view alone, that we can consider the questions submitted by the demurrer, and the exceptions in the case at bar. The indenture in question is admitted by the pleadings to be interchangeably. executed, as well by Thomas Dudley, as by Joseph Carnes, parties thereto. By the common law such an indenture, and each part thereof, is the deed of both parties, as well as when both parties execute each part. No title of any purchaser or creditor, or other person lawfully claiming against the operation of this *357 deed, by showing a claim or title under the protection of the statute, has been sufficiently set forth, or averred, or proved on the trial. The. only question is, whether the indenture was the deed of Thomas Dudley; which is to be decided for the sole purpose of determining the state of his title subsequent to the common recovery suffered by him.
Whether the acknowledgment and registry of one part, that executed by Carnes, in the case at bar, was a sufficient acknowledgment and registry of the indenture in question, and as to every purpose a compliance with the requisites of the statute, it is not necessary now to determine. For however that may be, in a question upon the title of Thomas Dudley, and indeed in every other view of the case at bar, as it stands upon the pleadings, I am clear in the opinion that, without any acknowledgment or registry, it was a sufficient deed by * Thomas Dudley, operative [ *461 ] against him and his heirs, and that the surrejoinder of the demandant, demurred to by the tenant, is therefore good and sufficient in law to maintain the demandant’s replication.
It follows of course that by the operation of the indenture and common recovery, the demanded premises were transferred and conveyed to Joseph Dudley the testator; and with this construction of the indenture, the other evidence stated in the exceptions ought to have been left to the jury, and the verdict ought to be for the demandant upon that issue, notwithstanding the want of acknowledgment and registry, as to the part of the indenture executed by Thomas Dudley.
The exceptions for the tenant, against the verdicts found for the demandant, remain to be considered.
The first issue joined upon the plea that Joseph Dudley deceased never devised, &c., was decided by the demandant’s proving the will and devise, notwithstanding the tenant objected the prior title of Thomas Dudley; and it is contended for the tenant, that this plea is a general issue, and that upon her showing the common recovery, and professing to claim under Thomas Dudley, it became incumbent upon the demandant to prove, in maintaining a devise, not only the will, but the seisin of the donor, against the title of Thomas Dudley, and the supposed claim of the tenant under it.
No authority has been cited in support of the position that non devisa,vit pleaded to a writ of formedon is a general issue. The analogy of the issue of non devisavit to that of non jeoffavit is strongly opposed to it. The latter is settled by the authorities to be a special issue. The pleadings in the case cited from H. Blackstone’s reports (5) *358 show that never devised was then considered a special issue; for it is pleaded as to a part of the premises in contest, and is. accompanied with another plea, in which the seisin of the testator [ * 462 ] in the other * part is traversed or avoided. Besides, to a writ of formedon, the plea of ne dona pas is the formed and established general issue.'
The rule of law is not disputed, which excuses a party, in maintaining a special issue, from producing any evidence or testimony not relevant to the point in trial. And I do not perceive that, upon evidence of a title in Thomas Dudley prior to that of the testator and a mere suggestion of a claim under it, it could be incumbent on the demandant to prove the title of the testator, even if the trial had been upon the general issue.
It is within my recollection that the question, whether non devisavit is the general issue, occurred in the first trial, and was then decided as it now is. According to the rules of the Court, the pleadings might have been then amended, upon showing merits requiring the general issue for a complete investigation. At the present stage of the cause, upon the review, the pleadings have been considered as not within the power of the Court for any amendment.
I am, upon the whole, satisfied that the direction of the judge was, in this particular, correct; and I see no remedy which the party can now have, if the case would admit of any, upon a change in the pleadings.
The fourth issue joined upon the plea in bar, that John Gray and Abigail his wife did not bargain, surrender, &c., the right, estate, &.c. of the said Abigail in the tenements aforesaid, was found for the demandant by the direction of the judge. The evidence was the deed by them and another to William Dudley, father of the demandant, registered on the acknowledgment of John Gray, but not acknowledged by his wife. This deed' was admitted to the jury upon evidence of the bandwriting of a subscribing witness, after proof that the deed came from the hands of Thomas Williams, summoned by the tenant to defend in this suit, she claiming the premises under him, and it also appearing that the said WilI" * 463 J liams was a subscribing witness, that two of the * subscribing witnesses were dead, and the remaining one not within the process of the Court. I think the deed was properly admitted in evidence upon this proof.
And respecting the defect of an acknowledgment, there was proof of a seisin under the deed, and no contravening title was given in evidence. The legal operation of this deed was a surrender and extinguishment of the life estate of Abigail Gray, formerly Abigail Dudley.
By immemorial usage within this state, a married woman may *359 convey, jointly with her husband, any estate holden by them in her right. Deeds of this description have become a common assurance in the country. There is no analogy between an acknowledgment before a justice of the peace, and the examination in a Court of record, when a married woman- conveys by fine or recovery; and there has been no practice in this state, which can, in my opinion, justify an argument from the record of a fine or recovery to the certificate of a justice of the peace.
In determining upon the validity of a conveyance by a married woman, joining with her husband in a deed of her estate, the same rules of evidence apply, as in the case of a person under no legal disability. In no case is the certificate of an acknowledgment any proof of the execution of a deed. The proof is to be by the subscribing witnesses, in the case of a deed by husband and wife, as well as in every other case. The statute, in requiring an acknowledgment and registry, is to receive the same construction in all cases: the deed is good and effectual against the grantors, and is invalidated, only, when the aid of the statute is required to protect the title of an innocent purchaser or creditor without notice. If the jury believed the evidence submitted to them, their verdict, in my opinion, was right upon this issue.
Sedgwick, J.
[stated the purport of the demandant’s count, and proceeded]. To this count there are *four [*464 | several pleas, terminating in issues of law or. fact, on which I shall severally give an opinion, formed on much considera tian, and aided by very able arguments of counsel on both sides.
The first answer to the count is, that Joseph Dudley, deceased, did not devise the tenements aforesaid, with the appurtenances, to the said Abigail for her life, and after her death to remain to the said William Dudley, and his heirs male of his body lawfully begotten, in manner and form as by the demandant is alleged; and it concludes to the country. The issue tendered is joined.
In the trial of the issue, the counsel for the tenant insisted that the plea of non devisavit ought to be considered as putting in issu** all the material facts alleged in the demandant’s count; that, in other words, it is the general issue. The counsel for the demandant, on the other hand, thought that all that was necessary for them, to maintain the issue on their part, was to prove that Joseph Dudley, deceased, did make a devise, in the manner they had alleged, by his will. And of this opinion was my brother Thatcher, who tried the cause. A will duly proved in the Probate Court was given in evidence, containing devise alleged ; and this being deemed sufficient, a verdict on this issue was found for the demandant.
It is to be observed that it has been determined, <or reasons un *360 necessary now to be mentioned, that in this state the probate of a will is as conclusive as to real estate, as it is in England as to personal. If, then, the opinion 'of the judge was correct, that the pleadings put in issue only the devise, the verdict ought to stand. But if the issue joined is to be considered as the general issue, affirming on the one hand all the material facts alleged in the demandant’s count, and denying them on the other, then the judge was mistaken ; and for that reason a new trial of this issue ought to be granted.
The law relative to pleadings has prescribed particular [ * 465 ] forms of expression, which shall in different actions * be considered as the general issue, or a denial of all the material facts alleged in the plaintiff’s declaration. In assumpsit, for instance, the defendant, by saying that he did not promise, renders it necessary, for the plaintiff to recover, that he should prove every material fact alleged, of which there may be many. Or he may expressly deny any such fact, and tender an issue upon the truth of it. In the latter case, all the facts which are well alleged, except the one which is denied, are admitted to be true. For example, if the plaintiff alleges a promise, which is to be performed upon demand, where a special request is necessary to entitle him to recover, the defendant may plead either the general issue, non assumpsit; or he may deny the special request alleged by the plaintiff, and then he admits the promise, and relies merely on the want of a demand for its performance. All that the plaintiff has to do in such case, is to prove that a legal demand was made. The same principle might be illustrated in various other kinds of actions. I do not know any instance in which the defendant may not, if he pleases, admit the truth of every material fact but one, and take issue upon that. And it is reasonable that he should be permitted to do so, because the fact denied may be the only subject of controversy between the parties. The same thing is done in the case at bar, by the fourth plea, which puts in issue only the surrender of the life estate, which is alleged in the demandant’s count.
In formedon, as it appears from a recurrence'to all the authorities, ne dona pas, non dedit is the general issue. It denies, as in this case, the seisin of the devisor, his will, the devise, his death, and whatever else is necessary to the title set up by the demandant. One of these facts, it is true, is the devise. When that alone is singled out and denied, the demandant has no notice, when he [ * 466 ] comes to trial, to prepare himself to substantiate * any other facts. He may, therefore, reasonably conclude that nothing further is incumbent on him, than to prove the fact on which the defendant has rested his defence. But had the defendant pleaded, as all precedents had prescribed for the general issue, that* the *361 demanded premises had not been given, as the demandant had alleged, although, on the trial, the devise was admitted, yet unless the other material facts alleged had been proved, such as the seisin of the devisor, &c., the demandant could not have prevailed.
As I conjecture, from what has been said upon the argument, that the real intention of the tenant was, by the plea of non devisavit, to Í)ut in issue the whole title set up by the demandant in his count, I lave been desirous, if possible, without infringing established principles, so to consider it. But after a pretty laborious research, I can find nothing to justify it. The general issue in formedon -is as well known and established as in any form of action whatever; nor do I perceive why a denial of the seisin of the devisor would not have as well assimilated to the general issue, as a denial of the devise. I have in vain sought for something which, from analogy, would authorize us to consider the plea in this case as it might have been intended, — a general denial of the demandant’s title. If the real intent was, under this plea, to put in issue the whole title of the demandant, I lament that the case is beyond relief from the Court. As the action was tried upon a .review, it must by the statute be tried on the original pleadings, and of course no amendment can be made.
I shall not make any particular observations on the pleadings arising upon the second plea in bar, as influencing my opinion, w hich is founded upon the merits. But I cannot omit to state some things, which might require attention, and have not been noticed in the argument; such, as that the demandant’s replication does not allege that either part of the indenture was ever recorded; — that the replication concludes with traversing that the * re- [ * 467 ] covery was to the use of Thomas Dudley, which seems to me to be tendering an issue of the legal inference from the facts alleged ; — and the surrejoinder tenders an issue on several facts, that the indenture was the deed of Thomas Dudley and Joseph Carnes, that one part executed by Carnes was acknowledged and recorded, to which affirmative allegation there does not appear to be any express negative on the part of the tenant; but the several facts affirmed seem to be admitted, either expressly or by implication. The real question that is presented upon the merits is, To whose and what use, in legal contemplation, was the recovery suffered by Thomas Dudley ?
Thomas Dudley, being tenant in tail of the demanded premises, in April, 1765, suffered a common recovery in an action sur disseisin, brought by Joseph Carnes, who was afterwards put in possession by a writ of seisin. Now, if there is no deed, legally operative, to lead or declare any other use, the recovery was to the use of Thomas Dudley, *362 in fee simple ; and the only effect of it was to convert what was before a fee tail, into a fee simple estate.
Previous to the recovery, there was a deed of indenture, between Joseph Carnes, the recoverer, and Thomas Dudley, the recoveree, by which it was declared that the recovery should be to the use of Joseph Dudley, in fee simple. One part of the indenture was executed by Dudley, and was never acknowledged or recorded. The other part was executed and acknowledged by Carnes, and has been duly recorded.
If a deed to lead or declare the uses of a common recovery need not be acknowledged and recorded ; or, if by law, such deed need be acknowledged and recorded, and if that be sufficiently done by the acknowledgment of the recoverer alone, and by recording that part only which was executed by him; then the pleadings show substantially the title set forth in the demandant’s count. [*468] *But on the other hand, if a deed declaring the uses of a common recovery must, to give it validity, be acknowledged and recorded, and that requirement of law is not satisfied by the acknowledgment of the recoverer alone, and the recording of that part only, which was executed by him ; then the allegations in the demandant’s count are not supported by the evidence; and as he can only recover by the strength of his own title, he cannot in this case prevail, unless under the particular circumstances of this case, which will be hereafter mentioned, the tenant is precluded from relying on the want of Acknowledgment and registry.
It is true, that where there is a deed to lead the uses of a common recovery, and a recovery is suffered in conformity to it, the deed and the recovery make but one conveyance. The recovery, without the deed, leaves the premises where they were, and only enlarges the estate of the recoveree. The deed without the recovery is wholly inoperative. Although this is true, yet it is true also, that, considering the deed and the recovery as one conveyance, the part which does actually convey the property, that is, transfer it from the recoveree to the uses expressed, is the deed. Whoever, other than the recoverer, claims, under a common recovery, must show the judgment executed. That alone gives him no title ; he must show also a deed to lead or declare the uses ; and the latter, it is obvious, is the only instrument, on which such a title can be shown ; that alone which can convey or transfer the estate.
It is necessary, then, to give to a common recovery the effect of conveying the estate from the recoveree, that there should be a declaration of the uses; and such a declaration being made by deed, it must undoubtedly be the deed of the recoveree, for the recoverer has no estí te of any kind to convey ; whether tne deed be made *363 before or after the recovery. A declaration of uses may be made, either by a deed poll or by a deed indented. In this case there was a deed indented. It was executed *by both [*469 j the parties to the recovery. It was to the use of the devisor in fee simple, under whom the demandant claims.
This presents three questions.
1. Is it necessary by law that a deed to lead or declare the uses of a common recovery should, like other deeds, be acknowledged and recorded ?
2. If such deed be by law a conveyance, and is necessary, as other conveyances, to be acknowledged and recorded, does the acknowledgment of such deed, when made by indenture, by the recoverer, and the recording that part which was executed by him, satisfy the requirement of the law in this regard?
3. If such a deed is, like other deeds of conveyance, to be acknowledged and recorded, is the tenant, under the circumstances of this case, concluded, because the deed to lead the uses was a deed by which Thomas Dudley and his heirs are bound ?
First, is it necessary by law that a deed to lead or declare the uses of a common recovery, should be acknowledged and recorded ? This question is made in reference to the laws in existence at the time the recovery under consideration was suffered.
There have been many acts made to prevent clandestine sales, and to enable purchasers of real estate to know the right and title of the seller. The means employed for those purposes have been generally, 1. The solemnity of the act of conveyance, that it should be by deed. 2. Evidence that the deed was voluntarily made, by an acknowledgment thereof before a magistrate. And, 3. That the deed should be recorded, so that by proper attention the title might be known.
By the statute of 9 Will. 3. c. 7., “ for registering of deeds and conveyances,” the intention of the legislature is expressed in these words, “ For the prevention of clandestine and uncertain sales of houses and lands, and to the intent it may be the better known what * right, title or interest persons have in and [ * 470 ] to such estates as they shall offer to sale,”-it is enacted that henceforth all deeds or conveyances of any houses or lands within this province, signed and sealed by the party or parties granting the same, having good right and lawful authority thereto, and acknowledged by the grantor or grantors before a justice of the peace, and recorded at length in the registry of the county where such houses or lands do lie, shall be valid to pass the same, without any other act or ceremony in the law whatsoever. And that from and after three months next after the publication of this act, no Iw *364 gain, sale, mortgage, or other conveyance of houses or lands, made and executed within this province, shall be good and effectual in law to hold such houses or lands against any person or persons, but the grantor or grantors, and their heirs only; unless the deed or deeds thereof be acknowledged and recorded in manner as is before expressed.”
It is evident, that if the recited negative provision of this statute, which was in force at the time of making the indenture and suffering the recovery in this case, includes a deed to lead the uses of a common recovery, then this deed, to give it validity, should have been acknowledged and recorded, as other deeds of conveyance.
Considering the purposes for which the act was made, in order to attain them, it ought to have a liberal construction. By deeds and conveyances, I believe, was intended to be comprehended every species of act, whereby one man could transfer property in “ houses and lands ” from himself to another; and if so, it certainly comprehends a deed to lead ike uses of a common recovery. This opinion I form, not only from considering this act by itself, but also from comparing it with several other acts, some made before, and some made after it. The general object was to prevent frauds on creditors and purchasers, by having a place, to which all could re- [ * 471 ] sort, and get the necessary information. In * making a provision for these important purposes, why should the pose of a common recovery be excluded ? It will be so, unless included in this act. For if any one, desirous of knowing in whom is the property of real estate, of which a common recovery has been suffered, should examine the judgment, from that he could form no opinion, but that it was to the use of the recoveree in fee simple; and if, by searching the registry, no deed, to lead or declare the uses, could be found, he might reasonably conclude that, by the recovery, the recoveree had acquired such a title, and that there would be no want of prudent caution in contracting with him accordingly. Yet if such a deed is not within the statute, he would find himself miserably disappointed.
The subjects of the act, so far as is necessary to determine the present question, are “ grantors,” and their acts described as “ deeds and conveyances of houses or lands.” Does the term “ grantor ” include a ‘enant in tail by deed declaring the uses for which a common recovery shall be suffered ¡ And does the expression “ deeds or conveyances of houses or lands ” comprehend a deed to lead the uses of a common recovery ?
The ancient technical description of a grant is, that it is the regular method, by the common law, of transferring the property of incorporeal hereditaments, or such things whereof no livery can be *365 had (6) ; and a grantor is he who makes the grant. It is evident that the statute does not use the term grantor in this restricted sense ; because the grantor mentioned in the statute, is one who makes conveyances of houses and lands, and not of incorporeal hereditaments. And in the negative part of the recited section, the grantor is one who conveys or sells houses or lands by bargain, sale, mortgage, or other conveyance.
By a recurrence to the acts of the legislature, it will be found that the term “ grantor ” is the most * common [*472 ] and comprehensive word used to mean one who transfers, by any mode of conveyance, property in houses or lands. In the act passed in 1641-2, grantor is made the correlative to all conveyances ; and the grantee is one who takes by any species of conveyance. In 1651, the legislature speak of grants of houses or lands made by towns. Here towns were grantors, and he to whom the grant was made was grantee. And by the charter of William and Mary, conveyances of lands are called grants. The statute of 3 Geo. 1. c. 2. is entitled an “ act for settling of grants,” and by the act it is apparent that the grants intended were conveyances of lands. By the act of 11 Geo. 2. c. 2., the conveyance by the gov ernment of townships of land is called a grant, and he to whom it is made grantee. By the act of 28 Geo. 2. c. 9., donations of lands to pious uses are denominated grants. The same mode of expression has been continued since the revolution. In the fourth and fifth sections of the statute of 1783, c. 37., “ for directing the mode of transferring real estates by deed, and for preventing fraud therein,” the word grantor is used to signify him, who, “ by deed or other conveyance, transfers real estate.”
From this concise view of the legislative use of the word grant, t is manifest that it means, not a transfer of incorporeal hereditaments, but of lands and houses by deed, or by other effectual conveyance. And it is true that grant is used by the most accurate modern writers, as comprehending more than a transfer of incorporeal hereditaments — a conveyance of corporeal hereditaments (7). As grantor is the most comprehensive word to signify one who conveys lands, so conveyance is the common statute word to intend the deed — the act or instrument, by which property in real estate is transferred.
It may not be useless to trace, from the earliest periods of our country, the acts of the legislature intended * to [ * 473 ] prevent frauds by clandestine sales of real estate, and to open and display to purchasers and creditors, in whom the tith is.
*366 In the year 1641-2, “for avoiding all fraudulent conveyances, and that every man might know what estate or interest other men had in houses, lands, or other hereditaments,” it was ordered, “ that after the end of October, one thousand six hundred and forty, no mortgage, bargain, sale or grant, made of any houses, lands, rents, or other hereditaments, where the grantor remains in possession, shall be in force against other persons, except the grantor and his heirs, unless the same was acknowledged before some magistrate, and recorded.”
In 1652, for the prevention of clandestine and uncertain sales and titles, it was ordered and declared, “ that no sales or alienation of houses and lands in this jurisdiction, shall be holden good in law, except the same be done in writing, under hand and seal, and delivered, and possession given upon part, in the name of the whole, by the seller or his attorney so authorized under hand and seal; unless the said deed he acknowledged and recorded according to laiv.”
By the statute of 9 Will. 3. c. 7., the same provision in substance was made, and to attain the same wise purposes, as has been already expressed.
After an experiment of the beneficial effects of registering deeds and conveyances, the legislature, by the act of 1 G. 1. c. 4., established a distinct office for that purpose ; which was declared to be for the more safe and convenient keeping the registry of deeds and conveyances.
And to show that the legislature has at all times been anxious to guard against frauds by the clandestine conveyance of real property, and to afford effectual means to all who are interested to discover in whom the title to it is, I will mention the act passed [*474] since the revolution, * 1783, c. 37., which, after providing in the fourth section for the acknowledgment and registry of deeds and conveyances, expressly provides that no “ bargain, sale, mortgage, or other conveyance in fee simple, fee tail, or for term of life, or any lease for more than seven years from the making thereof, of any lands, tenements or hereditaments, within this commonwealth, shall be good and effectual in law to hold such lands, tenements, or hereditaments, against any other person or persons, but the grantor or grantors, and their heirs only, unless the deed or deeds thereof be acknowledged and recorded as aforesaid.”
If from the general view I have taken, it is evident that it was intended that every conveyance should be recorded, and if a deed to lead the uses of a common recovery is a conveyance, then the deed in this case, to give it validity, ought to be acknowledged and recorded, as other deeds of conveyance.
But it is said, that the judgment itself is tantamount to recording. *367 To this I answer, that the judgment itself is not a conveyance. It enlarges the estate, but without a deed from the recoveree it conveys nothing. It is therefore not within the words of the act; and it is as little within the reason of it, for the judgment would afford no evidence that the estate had been transferred. After a distinct office of registry was created, it seems to me, that in it conveyances are to be recorded. In this case, that which renders the recovery a conveyance is the deed to lead the uses. It is that, by which the property in the recovered premises is transferred. As then the words of the statute are large enough to comprehend this species of deeds, and as there is as much reason why they should be recorded, to prevent frauds by clandestine sales, as any other conveyances, and their publicity is as much required as in any other in stance, it is impossible for me to conclude that it was intended to exclude them.
*2. Again, as the law requires that the deed in this [*475 ] case should be acknowledged and recorded, is that requirement satisfied by the acknowledgment of Carnes, and the re cording of that part which was executed by him alone ?
The deed in this case was an indenture, one part of which was executed by Carnes, the recoverer, and the other part by Dudley, the recoveree. Carnes acknowledged and recorded his part. The other part was never acknowledged or recorded. It is true that this indenture was but one deed, and that every part of it was the act of each of the parties. But it is necessary, to give it effect and render it valid against strangers, that something more should be done; that it should be acknowledged and recorded.
By whom is the acknowledgment to be made ? If it be true, that a deed to lead the uses is within the statute, then it must, by the express requirement of the act, be acknowledged by him who is denominated the grantor. Who then is to be considered as the grantor ? The man, undoubtedly, in whom the title to the land was at the time of making the deed, and from whom, by virtue of it, that title was to be transferred. Now Carnes never had, either then or at any other time, any title whatever to the land in controversy ; nor could he do any thing to operate upon it. He cannot then be considered as the grantor, whose acknowledgment is rendered indis pensable to the validity of the deed.
The mischief, which might result from a different construction, is obvious by the case supposed by the counsel for the tenant in the case at bar. Had Thomas Dudley procured Carnes to bring an action for the mere purpose of barring the entail, and vesting in himself an estate in fee simple, and Carnes should have made, executed, acknowledged, and caused to be recorded, a deed, purporting to *368 oe an indenture, in which the intended recovery should be declared to be to the use of himself in fee simple — that such a [*476 ] deed would be effectual, I * believe will hardly be pretended. But it must be, provided it be all that the statute requires. The deed, if within the statute, must be acknowledged by the grantor, which I think Carnes certainly was not; nor can his acknowledgment be considered as a substitute for the express requirement of the statute. If there had been no counterpart of the indenture executed by Thomas Dudley, it can hardly be seriously pretended that the deed of Carnes could have any effect to lead the uses of the recovery. That effect is produced by its being the deed of Dudley ; but the deed of Dudley, if it be within the statute, to give it validity, must have been acknowledged by him and recorded.
3. The third question is, Can the tenant take advantage of the defect of the acknowledgment of Thomas Dudley of the deed to lead the uses of the common recovery ?
I think she cannot, and that this is apparent by the facts, which the pleadings disclose upon this record. These are, as they have an effect on the recovery, that Thomas Dudley was tenant in tail of the lands in controversy; that being so tenant, the deed to lead the uses was executed by the tenant in tail, by which the recovery was to be to the use of Joseph Dudley in fee simple, under whose will, and according to the devise expressed in it, the demandant claims; that the recovery was had according to the deed; that possession was taken under it; and that Joseph Dudley thereby became seised, that he made his will, as set forth in the demandant’s count; and that he died so seised. These are all the material facts, which in this regard are exhibited.
Now, as it appears, even by the confession of the tenant, that Thomas Dudley, when he made the deed, and when the recovery was suffered, was tenant in tail, the deed, as it respected him and his heirs, was good and effectual to direct the uses of the recovery; and as the devisor became seised in fact accordingly, and during such seisin made his will, and the devise set forth, [ * 477 ] it * must be conclusive against the tenant. For she, having admitted the title of Thomas Dudley, must, if she would resist the claim of the demandant so substantiated, derive the title to herself; and the least that could be incumbent on her would be to derive a title, from Thomas Dudley or his heirs, by- purchase, made bona fide, and without notice of that set up by the demandant. Now, nothing of all this is done. For although she alleges that she has acquired the title of Thomas Dudley, this is only by the way of giving color, and without alleging any fact, on which an issue could be *369 taken; and this too after it appears from the record, that a title was so vested in Joseph Dudley, that it could not be divested by any other means, than those which have been suggested, — alleging in an issuable form, a title derived from Thomas Dudley, bona fide, and without notice of the conveyance to Joseph Dudley.
The issue tried under the tenant’s third plea in bar, is whether the common recovery set forth in the plea and confessed in the replication, was or was not to the use of Thomas Dudley in fee simple.
I think that the jury was incompetent to try the question involved in this issue; that it is merely the legal result of the facts set forth and relied upon by the one party or the other. Both the parties claim under a title derived from Thomas Dudley. They both agree that he was tenant in tail of the demanded premises, and that he suffered a common recovery. If there has been no valid deed to lead or declare the uses, the recovery was to the use of Thomas Dudley, and the title set out in the demandant’s count, and repeated in the pleadings, is falsified. A deed to lead the uses in this case was made and executed, in the form of an indenture between Thomas Dudley and Joseph Carnes the recoverer; each executing one part. The part executed by Carnes was acknowledged; but by this set of pleadings it does not appear that it ever was recorded. The part executed by Dudley was never either acknowledged or recorded. If *the deed was effectual to lead the [ *478 ] uses, then the recovery was not to the use of Thomas Dudley; if it was not effectual for that purpose, then the recovery was to his use. But as all the facts necessary to determine that question are displayed on the record, it is merely a question for the determination of the Court. It is a question to be resolved by a just construction of the statute, which existed at the time the deed was made; a question which I conceive ought never to have been referred to the jury.
But as it has become necessary to determine as to the opinion that was given at the trial by my brother Thatcher, as a construction of the deed, it will appear by the observations which I have already made in relation to the preceding pleadings, that his opinion delivered to the jury was not correct. It is not necessary again to repeat the reasons of my opinion.
Before I conclude my observations on this part of the case, I will notice that it is unintelligible to me, how it should have happened that by these pleadings the use of the common recovery is put in issue to the jury ; while in the second plea in bar the recovery is averred to the use of Thomas Dudley in fee simple, which allegation by the replication tc that plea is traversed, and thereby the same *370 issue formed. Yet afterwards the parties proceed in their pleadings, which finally end in a demurrer.
Independent of our statute, the uses of a common recovery might be directed without deed, and then such an issue as this might be formed. But here, where every fact is set forth, the question, to ivhose use toas the recovery, is merely a question of law, and ought never to have been hied by the jury. What will be the ultimate effect of this mistake, and whether there can be a valid judgment from the finding of the jury, is not for me now to determine ; but as the judge, who tried the cause, was mistaken in the construc- [ *479 ] tian he gave to the * transaction, I think on this account there must be a new trial.
The fourth plea is in substance that Gray and his wife did not convey her life estate to William Dudley, as is alleged in the demandant’s count, upon which denial an issue is tendered and joined.
The demandant sets forth in his count a devise for life to Mrs. Gray, and a surrender thereof to William Dudley. As there is no allegation of her death, the demandant could have no right to recover, unless the surrender was substantiated. For this purpose a deed was offered, purporting to have been executed by the husband, his wife and one Thomas Fayerweather. The deed was acknowledged by Fayerweather and by the husband, and recorded, but was never acknowledged by the wife. Can this operate as a surrender of the freehold of the wife ? If not, whatever otherwise may be the title of the demandant, during the life of Mrs. Gray, he is not entitled to recover.
The law, in contemplation of the control which the husband has over the wife, has given some security to her property, by incapacitating her to alienate it. Hence the deed of a feme covert differs from that of an infant in this, that while his is only voidable, hers is absolutely void (8). The husband cannot, by any act of his, bind or affect the inheritance or freehold of the wife. If a common recovery be suffered, although upon a yreecipe against the husband and wife, it is no prejudice to her title (9). If a feoffment be made by the husband and wife, of the land of the wife, it is no discontinuance ; for although the wife joins, it is the feoffment of the husband alone (10). To give validity to the acts of the wife, affecting her inheritance and freehold in England, it is necessary [ * 480 ] that she should be examined in such manner, * and un *371 der such circumstances, as to secure her against the effects of coercion from her husband (11).
How far either principle or practice will justify giving to a wife’s acknowledgment of her deed before a justice of the peace the same effect as an examination in the case of a common recovery or a fine, I pretend not to determine. But to give validity to a deed ex-' ecuted by the husband and wife, because the same was acknowledged by him and recorded, would deprive her of all the security she derives from the principle which I have mentioned. I need not add, that giving possession in conformity to the deed cannot tend to its efficacy, because that is an act which may always be performed by the husband, and which the wife has no means of resisting.
I am on the whole inclined to believe that there is a defect of proving a surrender of the life estate of Mrs. Gray, and that therefore the demandant is not entitled to recover. This, on principle well and long established, I have thought of considerable importance ; and more so in this country than in England, because here there are few marriage settlements, and consequently the wife is generally under the absolute control of her husband. It is necessa ry, therefore, to protect her property against arbitrary coercion, that the only means of defending it, which the law has provided as a shield to her incapacity, should be kept sacredly for her protection and security. This can never be the case, if a deed, signed jointly by her and her husband, without any other ceremony whatever, shall be effectual to deprive her of her freehold and inheritance.
It is unnecessary, in the view I have taken and expressed of this part of the case, to determine as to the proceedings at the trial respecting this issue.
Thus the exceptions of the tenant to the directions of the judge upon the trial of the issues in fact joined under * the first and fourth pleas in bar were overruled; the de- [*481] mandant’s surrejoinder under the second plea in bar, to which the tenant demurred, was held good; and a new trial was ordered, for the misdirection of the judge on the trial of the issue joined under the third plea in bar.
The Chief Justice, having been of counsel for the demandant in the original action, did not sit in the cause; and Thatcher, J., † had *372 not arrived in town at the time when the opinions of the three other judges were delivered as aforesaid.
After the Court had thus decided that the verdict rendered m this cause ought to be set aside for the misdirection of the judge who sat in the trial thereof, and before any order of the Court was made in that behalf, the counsel for the tenant moved for leave to amend, by consent of the demandant, her first plea in the original action, by striking out the word devise, and inserting * the word [ * 482 ] give; — and that the verdict might not be set aside, nor *373 a new trial granted, unless the demandant would consent to such amendment being now made.
In support of the motion, it was observed, that, though by the statute of 1786, c. 66., granting the privilege of review in civil actions, it is declared that there shall be no further pleadings, but the actions shall be tried * upon the review by [ * 483 J the issue appearing upon the record to have been originally joined by the parties, yet by the statute of 1803, c 93., under which the exceptions were filed, it is provided that “ the Courts, *374 to which actions may be continued upon exceptions filed and allowed, shall have cognizance thereof, and do therein what to [ * 484 ] law and justice shall appertain.” Under * this provision, if the Court saw that by an error of her counsel, as they were now bound to acknowledge it, the tenant had lost the opportunity of a trial upon the merits of her cause, they would use their authority to give her such a trial. That authority they could lawfully exercise, by making it a condition of granting a new trial to the demandant, that he should consent to the amendment prayed for.
*375 * Before the decision of the Court in this cause, the [ * 485 ] counsel for the tenant believed that non devisavit was the general issue in this action, which they thought ought rather to meet the demandant’s count, than his writ. It could not be supposed for a moment, that they intended to rest their client’s cause on the mere fact of the existence of the will, which had always, been known * to them, or on the construction of the [ * 486 ] words of this particular devise. It was well known to the Court, that, until lately, pleadings had been very loosely conducted in this part of the commonwealth.
*376 Within a very few years the plea of not guilty was universally pleaded as the general issue in all real actions.
[ * 487 ] * For the demandant it was said, that the Court could not legally grant the motion, and that if they could, it would be unreasonable. The new trial is ordered, not for any loches or fault of the demandant, but wholly for the misdirection of the judge to his prejudice. The demandant then is entitled by law to a new trial, unshackled by any conditions of this kind. The tenant has had every advantage, under one or another of her pleas, which could avail in her defence.
The Court took some days for the consideration of this motion, after which their opinion was delivered by
Sedgwick, J.
In this case, the Court has determined that there ought not to be a judgment entered on the verdict, but that there ought to be a new trial. After this opinion was delivered, a motion has been made, and counsel heard in support of it, in substance that *377 previous to the new trial, the demandant shall consent to amend the pleadings, or that judgment shall be entered on the verdict.
Without entering into a state of the facts which the record exhibits, it is sufficient to observe that the demandant * is, upon principles of law, entitled to a new trial; because [ * 488 ] there was a misdirection of the judge in a matter of law material to the issue in trial. This is a sufficient cause for a new trial, and one that must control the discretion of the Court. The lemandant then, on the known principles of law, is entitled to a new trial.
The other part of the motion is, that the pleadings be amended, so as to authorize the tenant to plead the general issue, instead of the plea of non devisavit.
This was a trial by review, and the statute expressly denies to the Court an authority to direct, in the trial of such a review, new pleadings, or any amendment of them, by expressly enacting to that effect.
Whether, under every supposable case, this provision is, or is not a wise one, is not for the Court to determine. It is sufficient for us, that we have no discretion. We cannot, then, direct an amendment, without the consent of the demandant; and we think we cannot co erce the demandant to give his consent.
If we could do it in this case, we might in every other, when, in our opinion, justice required it; which would operate virtually a repeal of that provision of the statute of review, which has been alluded to. It would enable the Court to do that indirectly, which the statute has prohibited them from doing directly.
If from this cause an evil exists, for which a remedy ought to be applied, that remedy must be sought for elsewhere. It is beyond the power of this Court.
Memorandum. Perez Morton, Thomas Williams, Jun., James Richardson and Luther Richardson, Esquires, were at this term appointed by the Court to be examiners of Counsellors and Attor neys within the county of Norfolk.

 Catlin vs. Ware, 9 Mass. 218. — Pidge vs. Tyler, 4 Mass. 541.

 Goodright vs. Straphan & al., Cowp. 201.

 5 Com. Dig. Pleader, E. 24. — Hardr. 458. Attorney- General vs. Mellen. — 7 Edm 4. 26. 6.

 3 Mass. Rep. 579.

 3 Mass. Rep 578.

 Smith vs. Coffin, 2 H. Black. 444

 2 Black. Com. 317.

 2 Black Com. 314. — Co. Lit. Note 1. to 384. a

 Co. Lit. 42. b. H. & B.'s note, 249

 Co. Lit. 326. a-2 Inst. 681.

 Co. Lit. 326. a.

 10 Co. 42. b. 43. a. — 2 Inst. 673.

 Judge Thatcher, having formed an opinion in the cause differing on some points from his brethren, had not anticipated that the Court would proceed to the decision in his absence. He afterwards favored me with some minutes he had prepared, and from which he had intended to support the opinion he had formed, with a permission to subjoin them by way of note to my report of the case.
After a short recital of the evidence, and of his direction to the jury on the issue *372 joined under the third plea in bar, his honor proceeds * — This opinion I gave on the trial, having no authorities in Court, nor time to mature an opinion, except while the cause was in argument to the jury; observing that I could not perceive that there was any doubtful fact for them to decide, the whole question seeming to be, what was the law resulting from, the facts conceded.
The correctness of the opinion I am less inclined to doubt since the argument at ¿he bar, than I was at the trial.
In speaking of deeds to lead or declare the uses of fines and recoveries, Judge Blackstone says, if they be levied or suffered without any good consideration/ and without any uses declared, they, like all other conveyances, enure to the use of him, who levies or suffers them (a). Lord Kenyon (b), speaking of the operation and effec of a common recovery, says, it puts an end to the estate tail; the estate immediately becomes an estate in fee, and the party, whose estate is converted into a fee, if he took the estate tail as a purchaser, must take the fee as a purchaser; or if he took the estate tail by descent, must take the fee also by descent, as from the same ancestor.” His lordship is here speaking of a case where the tenant in tail was recoveree, and took back a fee by an express declaration of the use. But there is, I conceive, no difference in this respect, whether the use results by implication of law, orbe reserved by express declaration of the party, from whom the estate is to move (c).
In my directions to the jury, 1 laid out of the case the deed signed by Thomas Dudley, which purported to be the counterpart of that signed by Joseph Cernes, because it was not a declaration of a use sufficient in law, for reasons hereafter shown, and I di reeled the jury not to regard it.
A common recovery is a conveyance or common assurance of lands, &c., in which there must be actores fabulm, properly qualified. The recoverer is one of these, a mere instrument or creature of the tenant in tail He has no beneficial interest whatever in the lands conveyed or assured, nor any power over it, by force of the process of recovery (d). The tenant in tail limits the uses in a recovery; and where there is no consideration or proof of the uses to some other person, they result by implication of law to the recoveree (e). I believe it is correct to say, that in all cases, where others than the recoveree take any interest, estate or use under a common recovery, they take it by virtue of the use declared or appointed by the person from whom the estate is supposed to move. In the case before us, that person was Thomas Dudley. And in this state, such declaration or appointment of the use must be made conformably to the laws (f).
The case of Sheepshanks Ux. vs. Lucas (g) was cited at the bar, as in point to show that the recoverer, in a common recovery, has such a connection with the pro* cess, or is so interested in the lands assured, as to enable him to give force and efficacy *373 to, if not actually to originate declarations respecting the uses of them. But what is said in that case does not come up to the real question, or prove any such interest, in the recoverer. It is merely the dictum of Justice Denison, who says, “ The recoverer has the legal right, and must be taken by the Court to have the real interest.'' This was in reply to the second objection made to tho writ of error, which was, that B. Lucas, the recoverer in the process then attempted to be reversed, was the only defendant in the writ of error, and that he was but nominal, and .had no real interest; and it seems to have particular relation to that part of the objection, which complains that the heir of Thomas Pierson, the first vouchee, and on account of whose death before judgment was rendered against Thomas Cooper, tenant to the precipe in the recovery, the process in error was instituted, was not joined in the scire facias with Lucas. What Justice Denison says may well be understood to mean, that since Lucas had consented to become one of the actores fabul® in the process, he shall now be held to ansioer to any person who shall be aggrieved by it and seeks a remedy by writ of error. To the same objection Lord Mansfield barely says, “No authority or reason is produced for a scire facias to the heirand “ as to the merits,” he adds, “ it is extremely clear, that a remainder-man ought to have this chance to the benefit of the entail, viz. to see that all the proper and requisite forms shou'd be gone through, before he is barred of it.” No inference can be drawn, then, in my opinion, from this case in support of the position attempted to be established by it.
The deed executed by Carnes, and purporting to be one part of an indenture be tween him and Thomas Dudley, cannot be considered as any thing more than his own declaration. From the execution of that deed no evidence results that Thomas Dudley ever saw it, or had any knowledge of its existence. The whole might be a contrivance on the part of the demandant in the recovery. If, in fact, an indenture of two parts, as this deed purports, had been executed, in all things according to the requirements of the law, between the supposed parties, yet the part executed by Carnes is not the part that ought to be exhibited and produced by a person claiming rights and interest moving from Thomas Dudley. I have not found a single instance in the entries, of a person claiming under an indenture, who did not produce the part executed by the person from whom the interest flows, or the obligation arises. The case of Burleigh vs. Stibbs (h) is a strong illustration of this part of the subject. Indeed I do not see how a question could have been raised in the case at bar, had it not been for the deed signed by Thomas Dudley, purporting to be a counterpart of that signed by Carnes, although that deed was not acknowledged or recorded in the registry of deeds for the county. What effect it can have in the case, according to the laws of this commonwealth, demands consideration.
When our ancestors commenced their legislative functions in this new country, they considered the laws they were born under as accompanying them here, and fix ing with them on the soil itself. Undoubtedly they were acquainted with the evils complained of on account of uses and trusts being distinct from the possession, which evils were intended to be remedied by the statute of uses. They were not ignorant how far that statute, together with the statute of enrolments, had succeeded, and wherein they were manifestly deficient. They must have known that bargains and sales, other than for a valuable consideration, covenants and deeds to uses, conveyances by lease and release, and all deeds to lead and declare the uses of fines, feoff *374 ments and recoveries, none of which were within the statute of enrolments, might be executed in a secret manner.
As early as 1641, we find them attending to this subject, and endeavoring to prevent evils that had been felt in England, on the alienations of real estates, by ordaining “ that all lands and heritages should be free from all fines and licenses upon alienations, and from all heriots, wardships, liveries, primer-seisins, year day and waste, escheats and forfeitures upon the death of parents or ancestors, natural or unnatural, casual or judicial, and that forever.”
In 1642 it was “ordered that the clerk of every shire court should enter all grants, sales, bargains, mortgages of houses, lands, rents and hereditaments, with the name of the grantor and grantee, thing and estate granted, with the date thereof.”
This was expressly for avoiding fraudulent conveyances, and that every man might know what estate or interest other men might have in houses, lands or other heredit* aments , and it is evidently an improvement on the statute of enrolments. If a man could hold an estate in fee or in tail, by virtue of a deed, whether of bargain and sale, feoffment, or to lead or declare uses on a fine or recovery, secretly made and kept in the pockety how could others know what estate or interest he had ?
In 1651, the legislature directs what words shall convey a fee simple, and what a fee tail, in deeds and conveyances, to prevent uncertainties and lawsuits.
In 1652, for the prevention of clandestine and uncertain sales and titles, it was ordered, "that no sale or alienation of houses and lands shall be holden good in law, except the same be done by deed in writing, under hand and seal, and delivered and possession given upon part in name of the whole, by the seller or his attorney so authorized under his hand and seal, unless the deed be acknowledged and recorded.”
This act is an improvement upon the former one, by adding a negative to the operation of conveyances not recorded; it also improves on the statute of enrolments, by extending this negative to deeds generally, whereas the statute of enrolments negatived only deeds of bargain and sale for money.
In 1697, on a revision of the statutes, “ for the prevention of clandestine and un certain sales of houses and lands, and to the intent it may be the better known what righty title or interest persons have in or to such estates as they shall offer for sale,” a mode is prescribed, by which houses and' lands may be transferred, and it is then enacted that no bargain, sale, mortgage, or other conveyance of houses or lands shall be good and effectual in law, to hold the same against any person or persons but the grantor or his heirs, unless the deed be acknowledged and recorded.
With the knowledge we must presume the successive legislatures to have possess ed on this subject, I cannot devise a reason why they should be supposed to have in tended tacitly to except from the duty of acknowledging and recording the severa modes of conveyance, which the words of the statute of enrolments exclude, bu which are literally comprehended in their own law for recording deeds, &c.
Under the operation of the statute of uses, a covenant to stand seised to uses, or a deed to lead or declare the uses, on levying a fine, or suffering a common recovery, are conveyances, and do as effectually convey and pass houses and lands from one person to another, as a feoffment at common law (i), and are clearly within the words of the law of 1697 for transferring real estates by deed, which comprehends all bargains and sales, mortgages, and other conveyances by deed or deeds, and of course su» *375 pends the statute of uses as to all of them, unless the deeds be acknowledged and recorded as the law directs, excepting as to the grantor and his heirs.
Wherefore inasmuch as the deed signed and sealed by Thomas Dudley was offered as a conveyance of the use, or as a declaration of the use by him to Joseph Dudley ; and if it operates at all, or, to use the words of the act of 1697, if it be good and effect tuai in law, it will convey the land from Thomas through Carnes to Joseph; and the law is most express that neither a bargain and sale, or any other conveyance, shall be good and effectual in law to hold lands, &c., against any person but the grantor and his heirs, unless the deed thereof be acknowledged and recorded; and since the party, against whom this conveyance was used, was neither the grantor nor his heir; and because it was not acknowledged nor recorded, as the law requires; — I cannot resist the inference that it can be of no avail in this cause, and that it was rightfully rejected at the trial.
It was urged at the bar, and several authorities were cited to prove that a common recovery, and the deed to lead the uses, make but one conveyance. This may, in a sense, be true; and yet the conclusion intended to be drawn from it, viz. that such deed need not be recorded, will not be a legitimate one. For on the position that they are to be considered as making but one conveyance, still as the person, to whom the use is declared, takes the land by the declaration of the use, that instrument, whatever it be, which contains this declaration, and through which the statute will pass -he possession, must be considered as the conveyance by which he takes the land, and not any prior conveyance to his ancestors, or to the persons from whom it comes to him, whether it be a fine, recovery or feoffment.
A common recovery, and a deed to declare the uses, have very different functions to perform. Those of the former are appropriately to dock, break or unfetter an estate tail, and to bar remainders and reversions. The design of the deed is to convey the estate, thus unfettered or docked by the recovery, out of the recoveree; and in whomsoever it vests, it passes to him by virtue of the declaration, under the statute of uses. It may be the intention of a tenant in tail to dock the entail, and to pass a fee simple to some other person; for which purpose deeds, supposed at the time to be effectual, pay be made between such person and the tenant; yet upon an after legal investigation some defect may appear in the deeds, which prevented their intended effect; and the use, or, since the statute of uses, the lands, instead of passing to such person as the tenant in fact intended, will remain, by operation of law, a fee simple estate in himself (k). Thus in the case at bar; though Thomas Dudley intended to dock the estate tail, and convey a fee to his brother Joseph, as it were, by one transaction, and for that purpose deeds, which the parties might have supposed effectual, were prepared to declare the uses, and the recovery was suffered in due course of law; yet it now appearing that the deed, by which the tenant in tail intended to declare the uses, was neither acknowledged nor recorded, it must be adjudged to have been not good or effectual in law to pass the lands. And upon the last-cited authorities, the. recovery, by operation of law, has no other effect than to vest a fee simple estate in Thomas Dudley.
The admission, at the trial, of the deed executed by John Gray and others, was ex *376 cepted to, because it did not appear to have been acknowledged by Abigail Gray.— But as the deed was to operate as a surrender of the life estate of the said Abigail, and was made to him who held the remainder, it does not appear to me that an acknowledgment was necessary to give it such an operation. .
The principles of law on this subject are correctly stated by Wood in his Convey ancing (l). “ Where a thing cannot commence without deed, as a grant of a rent charge, rent-seek and the like, these cannot pass from the grantee or donee to another, but by deed; and by the same rule that which ought to pass by grant or deed cannot be surrendered without deed. But if lands be granted by deed for term of life, they may be surrendered without deed, although the first grant be made by deed; because the grantee’s estate in the land is not the better in respect of that, for it passed by the livery and seisin; and livery and seisin are sufficient to make an estate for life without deed; therefore a surrender in this case by paroi, by agreement of him to whom it is made, is good, because the grant would have been good without deed.”
The statute of frauds (m) declares “ all leases, estates, interest of freeholds, or term of years, &c., made or created by livery and seisin only, or by paroi, and not put in writing and signed by the parties so making or creating the same, &c., shall have the force and effect of leases at will only; ” and that “ no leases, estates or interests of freehold, or term of years, or any uncertain interest of, in, to, or out of any messuage, lands, tenements or hereditaments, shall be assigned, granted or surrendered, unless it be by deed, or note in writing signed by the party or their agents lawfully authorized, or by operation of law.”
The effect of which clauses seems to be, to render the transferring of interests in lands, by signs, symbols and words only, ineffectual; and to make it necessary, wher» any interest in lands is to be transferred, except by act or operation of law, that there should be some writing under the hand of the party. — But the statute leaves it in the election of the party, in cases where, previous thereto, a deed was not necessary to give effect to a transfer, to lease, convey, surrender, &c., in the same manner the party might have done before the statute, provided the transaction be accompanied by a note in writing signed by the party or his agent (n).
The signing, sealing and acknowledging of the deed by John Gray will be taken to be conclusive evidence of his consent to her surrender; and the surrenderee being in possession of the land, and the deed of surrender being found in his possession alter his death, will leave no doubt on the minds of a jury, but that he also agreed to. anti accepted the surrender.

 2 Black. Comm. 363.

 5 D. & E. 111.

 Abbot vs. Burton, Salk. 590. — Martin vs. Strachan & al. 5 D. & E. 107.

 1 Butr. 80. 115., andthe cases there cited. — 9 Mod. 172. Lord Denoentwater's case. — 2 Co Lord Cromwell's case.

 5 D. & E. 108. — Gilbert on Uses, 61. 64. — 9 Co. 11.

 Gilb. Uses, 18. 75

 1 Burr. 413.

 5 D. & E. 465.

 Wood's Ins'. 255. — 3 Wood’s Conveyancer, 495, — 2 Black. Comm. 333. 337, 338

 See Beckwith’s case. 2 Co. 58. — Jones vs. Morley, 1 L. Raym. 287. 12 Mod. 159. S. C.

 Vol. 1. 276. note c.

 4 W & M. c. 3.

 Plowd. 150. — Gilb. Rep. 235. — 2 Wils. Rep. 26.