DANIEL L. PARSONS *vs.* MARK H. SPAULDING, administrator.

Hampshire. Sept. 22, 1880. — Jan. 10, 1881. COLT & MORTON, JJ., absent.

Under the Gen. Sts. *c.* 94, §§ 3, 4, providing that original administration may be granted, more than twenty years after the death of an intestate, on any property belonging to the estate which thereafter first comes to the knowledge of a person interested therein, if administration is applied for within five years after the property becomes known, knowledge is not necessarily to be imputed to the person applying for letters of administration from the fact that he was the brother of the intestate and knew of his death, nor from the fact that the property consisted of a mortgage of land and a note secured thereby, which mortgage was duly recorded.

It is no objection to the granting of original administration, under the Gen. Sts. *c.* 94, §§ 3, 4, that the only property to be affected thereby consisted of a promissory note secured by a mortgage of land, and that the land had been for more than twenty years in the adverse possession of the person opposing the granting of the administration.

APPEAL, by the administrator of the estate of Frances Sackett, from a decree of the Probate Court, granting original administration on the estate of Seth Parsons, more than twenty years after his death. Hearing before *Gray*, C. J., who affirmed the decree of the Probate Court; and the appellant appealed to the full court. The facts appear in the opinion.

*J. C. Hammond*, for the appellant.

*J. B. O'Donnell*, for the appellee, was not called upon.

ENDICOTT, J. When administration has not been taken on the estate of a person deceased intestate, within twenty years after his decease, and any property, real or personal, accrues to

the estate, or, belonging thereto, first comes to the knowledge of any person interested therein, original administration may be granted on such property at any time within five years after it accrues or becomes known. Gen. Sts. c. 94, §§ 3, 4. The facts reported bring this case within the provisions of the statute. It is expressly found that Seth Parsons died intestate at Northampton in 1851, and at the time of his death was the owner of three promissory notes secured by a mortgage of land in Northampton, which was duly recorded. These notes and the mortgage were given to Seth Parsons by the son of Frances Sackett, the sister of the petitioner, and she continued, from the death of Seth Parsons until her own death in October, 1879, to reside on the mortgaged premises, claiming them as her own. The petitioner, a brother of the deceased, resided in the State of New York when his brother died, and has since continued to reside there. He knew of the death of his brother soon after it occurred, but had no knowledge of the notes and mortgage until February 1879. The petitioner and his sister were heirs at law and next of kin of Seth Parsons at the time of his decease.

It is said in the report that it did not appear that the petitioner had been in this Commonwealth since the death of his brother, or had made inquiries to ascertain whether he left any estate. The evidence is not reported, and the Chief Justice, before whom the case was tried, on appeal from the judge of probate appointing the petitioner administrator, did not find that the petitioner had been guilty of negligence in failing to make proper inquiries as to the condition of his brother's estate, or was put upon inquiry under such circumstances that knowledge of the existence of the notes and mortgage is to be imputed to him. On the contrary, as the decree of the judge of probate was affirmed, it must be inferred that the petitioner was not guilty of negligence or want of due diligence. The fact that he did not visit this Commonwealth or make inquiries, cannot, taken by itself and as matter of law, under the peculiar circumstances of the case, show that he was guilty of negligence.

Nor can it be said, as matter of law, that the petitioner had constructive notice of the existence of the notes and mortgage, because the mortgage was duly recorded in the registry of deeds in the county of Hampshire. It is provided in the Gen. Sts.

*c.* 89, § 3, that no sale or conveyance of land shall be valid against any person other than the grantor, his heirs and devisees, and persons having actual notice thereof, unless made by a deed duly recorded. But this provision relates to the transfer and conveyance of real estate, and is intended to prevent fraudulent or clandestine conveyances of land, and to bring to the knowledge of those seeking to obtain a title therein the true state and condition of the title in that particular estate. This view is confirmed if we trace this provision from the Prov. St. of 1697 (9 W. III.) *c.* 21, 1 Prov. Laws (State ed.) 298, through its successive reënactments in the St. of 1783, *c.* 37, § 4, the Rev. Sts. *c.* 59, § 28, and the Gen. Sts. *c.* 89, § 3. The preambles to the Prov. St. and to the St. of 1783 show that they were enacted for the purpose of regulating and directing the mode of transferring real estate, and to prevent fraud and uncertainty therein; and in the preamble to the Prov. St. these words are used: " to the intent that it may be better known what right, title or interest persons have in and to such estates as they shall offer for sale." It was said by Chief Justice Shaw, in *Lawrence* v. *Stratton*, 6 Cush. 163, 167, that " the sole or at least the main object of the registration of deeds was to give constructive notice of such conveyances to purchasers and creditors, having a purpose to acquire title to an estate by conveyance or attachment." See *Dudley* v. *Sumner*, 5 Mass. 438, 457.

It is to be assumed that a purchaser or creditor knows that the person, from whom or through whom he seeks to obtain a title to land, owns or claims to own the same; and he also knows where the land is, and in what county the deeds are recorded. He is therefore put on inquiry, and knows where to make inquiry, and he cannot shield himself by saying that he did not examine the records; but is held to have constructive notice of all deeds and conveyances of the land duly recorded. But no such reason applies to the heir or devisee of a person deceased, if he has no actual knowledge that the person under whom he claims died possessed of real estate. No question of the transfer of real estate arises in such a case, and he does not come within the category of persons for whom the statute is intended. Being ignorant of the existence of such land, there is nothing to put him on inquiry. It would be unreasonable to require him to

examine the registries in every county, for only by such a search could he ascertain with certainty whether his ancestor or testator left real estate in Massachusetts. Under such circumstances, constructive knowledge of the existence of a deed cannot be imputed to him. He would indeed be bound by any conveyance of land made by his ancestor or testator, whether recorded or not, and to this extent only would the statute apply to him. See *Cleaveland* v. *Boston Five Cents Savings Bank*, 129 Mass. 27.

It is also contended that letters of administration should not be granted to the petitioner, because his sister, Frances Sackett, had acquired a title to the land mortgaged by prescription, she having been in exclusive possession of it from 1851 to 1879, under a claim of title. But that question cannot be settled in the Probate Court, on a petition for letters of administration, but must be tried and determined in a court of law. The Probate Court was required only to determine whether a sufficient case had been made out to authorize the granting of administration, in order that the rights of the parties having an interest in this estate might be enforced and decided at law. *Bowdoin* v. *Holland*, 10 Cush. 17. *Decree affirmed*